No. 34,923

A. W. JENKINS, *Appellant*, v. THE CITY OF LINDSBORG, *Appellee.*

(107 P. 2d 705)

Opinion filed December 7, 1940.

*Evart Mills,* of McPherson, for the appellant.

*J. R. Rhoades* and *George R. Lehmberg,* both of McPherson, for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellant sought to recover additional compensation for services rendered to the city of Lindsborg. This appeal is from an order sustaining a demurrer to his evidence.

A. W. Jenkins was employed as a day laborer at the municipal gas plant from June 4, 1937, to April 19, 1938. He testified that he was employed by the superintendent of utilities, who told him his wages would be thirty cents an hour and that he would be given twelve hours of work a day "to equal the regular forty-five cents an hour for an eight-hour day." While the petition alleged that he had been employed by the city council, there was no testimony of any action by the council, or any conversation with any members of the council, concerning the employment. Until August 13, 1937, he worked twelve hours a day, and upon that date his daily hours were reduced to eight. He testified that thereupon he told the superintendent that he was not willing to work at thirty cents an hour if his hours were changed to eight hours a day, and that the superintendent said he would see if he could get forty-five cents an hour for him. Another witness testified that he also worked at the Butane gas plant, that the services were worth forty-five cents an hour; that he did similar work at the plant during the same period, that he received thirty cents an hour and was satisfied to work at that rate.

When appellant called for his check in September and was given a check based on thirty cents an hour, he protested to the city clerk, who told him that he was "powerless to do anything" and that he only made out the checks. He testified that he then said to the city clerk: "Well, I am still going to get forty-five cents an hour out of this before I am through." However, on September 7, 1937, he signed a voucher showing on its face a rate of thirty cents an hour, and thereafter until April 19, 1938, when his services terminated, he continued to accept monthly checks based on the thirty-cent hourly rate. During this period of about eight months he attended no council meeting to make protest, nor did he file any claim for additional compensation until after his services had been terminated. To this evidence the city's demurrer was sustained.

In his petition appellant alleged that "the council of the city of Lindsborg employed and appointed plaintiff as a day laborer to perform the above-mentioned services for the wages fixed in its said

salary schedule, to wit: forty-five cents per hour." He did not attempt to support this allegation. Not only did he have no express contract with the city council, nor was he employed directly by the council, but he testified that the superintendent who employed him said that he would be paid at the rate of thirty cents an hour and would have twelve hours work daily. At the trial the allegation of an express contract contained in the first cause of action was in effect abandoned and attempt was made to establish an implied contract to pay forty-five cents per hour. The theory of implied contract was predicated upon a resolution which had been passed by the city council on April 5, 1937, which was recited in the petition and which reads as follows: "Resolved: That the salary reduction of ten percent (10%) applied to the regular city employees, effective July 1, 1932, be restored; that, employees engaged by the city since July 1, 1932, be given an increase of ten percent (10%) on existing salaries, and day laborers engaged by the city be advanced from thirty-five cents per hour to forty-five cents per hour, and teamsters advanced from sixty cents per hour to seventy-five cents per hour, said increases to become effective May 1, 1937."

It is argued that by operation of law this resolution became a part of any agreement made at the time appellant was employed by the superintendent. If that were true the forty-five-cent rate would apply to the twelve-hour days from June 4 to August 13, 1937, as well as to the eight-hour days thereafter, and appellant does not contend for that. In fact, this acceptance of the thirty-cent rate for a twelve-hour day was in itself at variance with the resolution which he now invokes.

Reliance is placed by appellant in cases such as that of *Peterson v. City of Parsons*, 139 Kan. 701, 33 P. 2d 715, wherein it has been held that salaries fixed by ordinance for city officers appointed to statutory positions cannot be changed except by ordinance and that the acceptance of a lesser salary by such an appointed officer does not estop him from prosecuting a claim for the full amount fixed by the ordinance even though he has accepted the lesser amount without protest. But in the instant case there was no fixed term of employment, no appointment as a city officer to a statutory position such as would support a contention that the wage to be paid was fixed by law and could not be changed. As pointed out in the opinion of this court in the recent case of *Sturgis v. Kansas City*, 151 Kan. 658, 665, 100 P. 2d 661, decisions relating to statutory

officers who are employed for a definite time and at a fixed salary are not controlling as to subordinate employees who are not officers of the city and who may be discharged at any time with or without cause. Moreover, the resolution in question does not rise to the status of an ordinance made effective after publication and other compliance with statutory requirements, but amounts only to a declaration of intention to pay certain salaries and wages to employees. It is not even entirely clear whether it was intended to apply indefinitely in the future or only to those then employed by the city. In any event, no express contract by the city, as alleged, to pay appellant forty-five cents an hour was shown, and by his monthly acceptance for many months of checks which he knew were based on a rate of thirty cents an hour, appellant was estopped from asserting an implied contract for payment at a greater rate. For the same reason he was likewise estopped from recovering additional compensation under the second cause of action based on the principle of *quantum meruit.*

Appellant further contends that his rights were prejudiced by refusal of the trial court to hear counsel's argument on the first cause of action. Following defendant's demurrer to the evidence, the court stated that there was no evidence whatever of a contract, that the demurrer would be sustained as to the first cause of action and that the plaintiff would be heard on the second cause of action. Whereupon the following colloquy took place:

"By Mr. Mills: Comes now the defendant [plaintiff] and asks leave to reopen.

"By the court: Do you want to show a contract? How can you?

"By Mr. Mills: I would like to reopen it for the purpose of argument.

"By the court: The demurrer to the first cause of action is sustained. I will hear you on the second, Mr. Lehmberg."

On this record appellant contends that he was denied the opportunity to present his theory that there was an implied contract to pay forty-five cents an hour. While the resolution was set out, the petition specifically pleaded only an express contract to pay forty-five cents an hour as recited in the resolution, and no leave was asked to amend and plead an implied contract. Nonetheless, it would appear that the court might well have heard counsel further in argument before ruling finally on the demurrer to the first cause of action. The importance of according to counsel full opportunity to present arguments so that the court may be clearly advised as to litigants' theory and position in the case has been repeatedly em-

phasized. On the other hand, it will be observed from the colloquy, *supra,* that counsel did not answer the court's inquiry, but merely asked to "reopen it for the purpose of argument." Moreover, the journal entry recites that ruling on the demurrer was made "after argument." We are unable to say that plaintiff's interests were prejudiced. The demurrer was properly sustained as to both causes of action, and the judgment is affirmed.